## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PROTECTIVE LIFE INSURANCE
COMPANY,

      Plaintiff,

v.                                Case No: 8:22-cv-1866-CEH-CPT

EILEEN JACOBS, JAROLYN FAZIO
and RICHARD G JACOBS,

      Defendants.

_____

## ORDER

This cause comes before the Court on Richard G. Jacobs' Second Motion to Intervene (Doc. 67), the responses in opposition of Interpleader Plaintiff Protective Life Insurance Company ("Protective") (Doc. 73) and Defendant Jarolyn Fazio (Doc. 72), and the response in support of Defendant Eileen Jacobs, the Personal Representative of the Estate of Doris Heering ("the Estate") (Doc. 74). Also before the Court is the Estate's Motion to Amend its Answer and Cross-claims (Doc. 56), and the responses in opposition of Protective (Doc. 71) and Fazio (Doc. 70). In addition, Protective's Motion for Deposit of Funds, Discharge of Liability, Dismissal With Prejudice, and Attorneys' Fees ("interpleader motion") (Doc. 41), is before the Court, along with the responses in opposition by Fazio (Doc. 42) and the Estate (Doc. 44), and Protective's reply (Doc. 54).

Upon review and consideration, and being fully advised in the premises, the Court will grant Jacobs' motion to intervene, deny the Estate's motion to amend, and grant-in-part and deny-in-part Protective's interpleader motion.

## I.     BACKGROUND

Protective initiated this interpleader action on August 15, 2022, naming Fazio and the Estate as Interpleader Defendants. Doc. 1.  Protective alleges that it issued an individual annuity contract to Doris Heering in 2014. *Id.* ¶ 6.  The annuity application designated Jarolyn Fazio, Heering's niece, as the beneficiary. *Id.*  As of August 2022, the annuity value totaled approximately $500,000. *Id.* ¶ 14.  Heering passed away on March 1, 2022, and Fazio subsequently submitted a request for a lump sum payment of the annuity's death benefit. *Id.* ¶¶ 7, 10.  However, Protective learned that Heering's estate contested the beneficiary designation of Fazio as improperly procured by undue influence. *Id.* ¶¶ 8, 12-13.  As a result, Protective initiated this interpleader action pursuant to Federal Rule of Civil Procedure 22 in order to allow the Court to determine the proper party to whom the annuity proceeds are owed. *Id.* ¶ 15.  Fazio filed a cross-claim in which she seeks a declaratory judgment that she is entitled to the proceeds. Doc. 13.

Protective moved for interpleader relief on February 7, 2023. Doc. 41. Specifically, it seeks to deposit the annuity proceeds into the court registry, to be dismissed with prejudice from the action and discharged from all liability with respect to the annuity proceeds, for an injunction against the institution of any actions against

it related to the proceeds, and for attorney's fees and costs that it alleges were incurred above and beyond the ordinary costs associated with an interpleader lawsuit. *Id.*

In the meantime, Richard Jacobs filed a motion to intervene in the action on February 23, 2023. Docs. 43, 55, 67, 68.[1]   He explained that he has an interest in the action because he is the decedent's only child and heir, and because the decedent named him as the annuity's beneficiary prior to her death. *Id.*   Jacobs is the husband of the Estate's Personal Representative. *See*, *e.g.*, Doc. 44 at 16.   Protective and Fazio oppose Jacobs' intervention, while the Estate supports it. Docs. 72, 73, 74.   The Estate has also, apparently in the alternative, moved to amend its Answer in order to add the cross-claims that Jacobs seeks to assert. Doc. 56.   Fazio and Protective argue that the motion to amend is untimely and the proposed cross-claims fail to state a valid claim. Docs. 70, 71.

The Estate argues in its opposition to Protective's interpleader motion that it is premature to discharge Protective from liability until Jacobs is permitted to intervene. Doc. 44.   The Estate contends that Protective should not be given immunity from liability until the merits of the action are resolved, because at this point it appears that Jacobs' claim to the annuity may involve some degree of responsibility on Protective's part. *Id.* at 3-4, 7-12.   The Estate and Jacobs allege that the decedent attempted to change the annuity's beneficiary designation to Jacobs by acting through her financial

---

[1] Jacobs re-filed his motion along with a memorandum of law after the Court denied it without prejudice for the failure to comply with the procedural requirements of Federal Rule of Civil Procedure 24 and Local Rule 3.01(a) of the Middle District of Florida. *See* Doc. 65.

advisor, Edward Jones, whom they assert is Protective's agent. *Id.*  They rely on a durable power of attorney ("DPOA") executed by the decedent that granted Jacobs the power to change her account beneficiaries. *Id.*

Protective and Fazio contend that Jacobs' claim to the annuity proceeds has no merit.[2]  They argue that the DPOA explicitly did *not* give Jacobs the authority to change the beneficiary of the annuity to himself, and that its clear provisions are controlling over any textual interpretation arguments on which the Estate and Jacobs rely. *See* Doc. 72 at 8-10.  They also argue that any change of beneficiary form submitted to Edward Jones related only to the decedent's Edward Jones accounts and did not abide by the annuity contract's requirements to make a change of beneficiary request. *Id.* at 12-13.  Further, Protective disputes the claim that Edward Jones was Protective's agent for the purpose of the annuity, which is administered by Protective and not Edward Jones. Doc. 71 at 4-5.

With respect to its interpleader motion, Protective points out that none of the proposed claims in the motion to intervene or motion to amend answer and cross-claims are directly asserted against Protective. Doc. 71 at 2-3.  To the extent that the parties allege liability against Protective, the theories cannot succeed for the reasons discussed above. *Id.*  Protective, therefore, argues that it should be discharged from the action.  On the other hand, Fazio agrees with the Estate that Protective should not be

---

[2] All parties discussed this issue in detail in each of their filings to this Court.

discharged until Jacobs' new claims are resolved, for the sake of judicial economy. Doc. 42 at 2-3.

Finally, both the Estate and Fazio object to Protective's request to recover attorney's fees from the annuity proceeds.  Fazio proposes that the Estate be made to pay the fees, arguing that they were incurred as a result of the Estate's unreasonable delays and reliance on irrelevant issues. *Id.* at 3-6.  The Estate argues that the fees were a regular cost of business or were the result of Protective's or its agent's own errors and omissions. *Id.* at 12-13.

Each pending motion will be addressed in turn.

## II.    JACOBS' MOTION TO INTERVENE (DOC. 67)

Intervention is governed by Rule 24, Federal Rules of Civil Procedure.  A motion to intervene must be timely, must state the grounds for intervention, and must be accompanied by a pleading that sets out the claim or defense for which intervention is sought. Fed. R. Civ. P. 24.  A party is entitled to intervene as of right if he "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.* 24(a).  Permissive intervention is granted, in the Court's discretion, where a party "has a claim or defense that shares with the main action a common question of law or fact." *Id.* 24(c).

Jacobs argues that he is entitled to intervention of right, and that permissive intervention is warranted in any event.  Fazio and Protective respond that his motion

is untimely, he does not state any valid claims for relief, and he has failed to satisfy any of the Rule 24(a) or (b) requirements.

## A. Timeliness

Rule 24's timeliness requirement is designed to "prevent prejudice in the adjudication of the rights of the existing parties[.]" *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). Courts evaluating the timeliness of a motion to intervene have considered:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Eng'rs,* 302 F.3d 1242, 1259 (11th Cir. 2002). "Timeliness is to be determined from all the circumstances," rather than adherence to any bright-line rules. *N.A.A.C.P. v. New York*, 413 U.S. 345, 366 (1973); *see also McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) ("Timeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants[.]").

In *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989), the Eleventh Circuit found that a motion to intervene was timely where it was filed "only seven months" after the complaint, before any discovery had begun. The court emphasized that none of the parties already in the lawsuit could have been prejudiced by the

intervention at that stage. *Id.*  Similarly, a delay of six months was not untimely in *Georgia. v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002), even though the intervenor had known about the litigation the entire time and discovery was largely complete by the time the motion was filed.  The court noted that the district court had not yet taken any significant action in the case by the time of the intervention motion, which led it to believe that the existing parties would not be prejudiced. *Id.* at 1260.

Here, Fazio argues that Jacobs' motion is untimely because he knew about the action since at least September 2022, as the husband of an existing party who was communicating with Protective about the annuity even before the action was filed, yet he did not move to intervene until February 2023. Doc. 72 at 3-5.  Further, she asserts that his intervention will cause prejudice to the parties because it will result in increased motion practice, delays, and complications. *Id.* at 19-20.  The Estate contends, evidently on Jacobs' behalf, that the motion is timely in light of delays resulting from a change of counsel and illness, and that there is no prejudice to the existing parties. Doc. 68 at 3-4, 5-7.

The motion is not untimely.  Although about seven months passed between the point when Jacobs likely learned about the action and when he moved to intervene, a similar length of time was found not to be untimely in *Georgia* and *Chiles*.  The Estate has offered valid reasons that account for at least some of the delay in filing.  And, most significantly, this action is still in an early stage, and the addition of Jacobs as a party at this point is unlikely to prejudice the existing parties.  Although Protective and

Fazio argue that Jacobs' intervention will unnecessarily complicate the action, neither of them have articulated any prejudice that would result from the *delay* in moving for intervention, rather than from the intervention itself.  Considering the totality of the circumstances, the Court concludes the motion is timely.

### B.  Stating a Claim for Relief

Rule 24(c) requires a motion for intervention to include a pleading that sets out the claim or defense for which intervention is sought. Fed. R. Civ. P. 24(c).   The proposed pleading must be "well-pleaded"—meaning that it must state a legally sufficient claim for relief or defense. *See Babcock v. Town of Erlanger*, 34 F.Supp. 293 (D.C. Ky. 1940); 7C Fed. Prac. & Proc. Civ. § 1914 (3d ed.).  The general rules of pleading apply when determining whether the claim or defense is well-pleaded: "the factual allegations of the complaint are assumed to be true…and the pleading is construed liberally in support of the pleader." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003), citing *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986). Moreover, "determinations of fact based on extrinsic evidence are not appropriate at the stage of a motion to intervene." *Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1260 (7th Cir. 1983).  After all, just like at the motion to dismiss stage, "[t]he question on a petition to intervene is whether a well-pleaded defense or claim is asserted.  Its merits are not to be determined.  The defense or claim is assumed to be true on [a] motion to intervene, at least in the absence of sham, frivolity, and other similar objections." *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (citation omitted).

Fazio contends that Jacobs' proffered Complaint in Intervention fails to set forth sufficient allegations to state a claim that he is entitled to the annuity proceeds. Doc. 72 at 12-15. She argues that the allegations fail to address the objections that she and Protective have raised to Jacobs' claim; for example, he does not allege that he requested a change of beneficiary for the annuity in accord with the annuity contract, nor does he allege the factual elements necessary to establish an agency relationship. *Id.*

Jacobs' proposed pleading seeks a declaratory judgment that he is the beneficiary of the annuity. Doc. 67-1 at 3. In support of this request, he alleges that instructions were sent to Protective through its Edward Jones representative changing the beneficiary to Jacobs, in the form of a change of beneficiary form that was delivered to Protective's agent. *Id.* ¶¶ 8, 10. As a result, Jacobs alleges that he is the correct and intended beneficiary who is entitled to the proceeds. *Id.* ¶ 11.

Where a party seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, the court must decide "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007).

There can be no real dispute that a claim to the annuity proceeds in this action is an actual controversy that warrants the issuance of a declaratory judgment. Protective initiated this interpleader action so that the Court could adjudicate any disputes regarding the correct recipient of the proceeds. Fazio seeks a similar

declaratory judgment to Jacobs, requesting that the Court declare that she is entitled to the proceeds.  She does not argue that Jacobs fails to allege the existence of an actual controversy; nor can she, in light of her own request.  Instead, she contends that the facts he alleges are inaccurate and insufficient to establish that he has a valid claim to the proceeds.

Contrary to Fazio's arguments, Jacobs' factual allegations must be taken as true at this stage, and the Court may not determine the merits of his claim or evaluate extrinsic evidence.  Taken as true, his allegations adequately establish that he has a claim to the proceeds.  Fazio's and Protective's challenges to the merits of his claim are premature for this stage.[3]  Jacobs' allegations "raise [his] right to relief above the speculative level" and contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The proposed Complaint in Intervention adequately states a claim for relief.[4]

---

[3] Fazio specifically challenges the lack of underlying factual allegations to support Jacobs' claim that Edward Jones was Protective's agent. Doc. 72 at 14.  But an agency relationship is not an element of Jacobs' claim for declaratory judgment. *Cf., e.g.*, *Twyman v. Carnival Corp.*, 410 F.Supp.3d 1311, 1323 (S.D. Fla. 2019) (negligence allegations must adequately establish the elements of "apparent agency" when plaintiff relies on that theory of vicarious liability). Fazio cites no authority that requires a party to prove the existence of an agency relationship in order to avoid dismissal of this type of claim.

[4] In contrast, the request for declaratory judgment that Fazio's designation was improperly procured and void *ab initio* is inadequately supported by any underlying factual allegations. But because the pleading adequately states at least one claim, the Court finds that Jacobs surpasses this intervention requirement.  Any inadequacy in his pleading with respect to this potential cross-claim should be addressed in a motion to dismiss.

**C. The Rule 24(a) and (b) Factors**

In addition to the requirements discussed *supra*, a party seeking intervention of right must also demonstrate that: "(2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004) (quotations omitted).[5]  A party seeking permissive intervention must establish that he has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

Fazio's arguments that Jacobs does not have an interest in the action and does not raise a claim that has a question of law or fact in common with the main action are based entirely on her challenge to the merits of Jacobs' claim to the annuity proceeds. Doc. 72 at 7-11, 18-19.  As noted, however, a motion to intervene is not the appropriate forum for a substantive adjudication of the merits of a claim.  Further, this interpleader action exists in order to adjudicate the question of legal entitlement to the annuity proceeds.  Plainly, a party who argues that he is the correct beneficiary shares, at the very least, a common question of law and fact, if not an actual interest in the subject of the action.  Fazio does not challenge Protective's inclusion of the Estate as a party to the action, even though the Estate's argument that Fazio is not the correct

[5] The first requirement listed by the *Stone* court is timeliness.

11

recipient of the proceeds is based, at least in part, on its claim that Jacobs is.[6]  Fazio's argument does not survive scrutiny.

A closer question is whether Jacobs' interests are adequately represented by the Estate.  On this point, the Court observes that the Estate has devoted the majority of its briefing toward raising arguments on Jacobs' behalf; its response in support of Jacobs' intervention motion provides much more fulsome arguments than his own motion.  *See* Doc. 74.  The Estate has also moved to amend its Answer and Cross-claims to include identical claims to those that Jacobs seeks to raise.  *Compare* Doc. 67-1 *with* Doc. 56-1.  It is clear that the Estate is *attempting* to represent Jacobs' interests, whether or not he is a party to the action.  *See Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999) ("There is a presumption of adequate representation where an existing party seeks the same objectives as the interveners.").

However, the Court also agrees with Fazio that the Estate does not have standing to assert a claim that Jacobs is the correct beneficiary of the annuity due to the change of beneficiary form. Doc. 70 at 9-10.  The Supreme Court has held that "[f]ederal courts must hesitate before resolving a controversy…on the basis of the rights of third persons not parties to the litigation." *Singleton v. Wulff*, 428 U.S. 106, 113 (1976).  Third-party standing exists only where the litigant has suffered an "'injury

---

[6] Fazio also contends that Jacobs' status as heir of the Estate is irrelevant because an annuity is not a probate asset. Doc. 72 at 7.  But Fazio has provided no authority demonstrating that, if there is a finding that the beneficiary designation is invalid or void, the annuity proceeds would not pass to the Estate—of which Jacobs is the sole heir—as if no designation had been made.  Indeed, this is the basis of the Estate's involvement in the instant action.

in fact,' that gives him or her a 'sufficiently concrete interest' in the outcome of the dispute." *National Alliance for Mentall Ill, St. Johns Inc. v. Board of Cnty. Com'rs of St. Johns Cnty.*, 376 F.3d 1292, 1295 (11th Cir. 2004), citing *Singleton*, 428 U.S. at 112-16.  In addition, the litigant must have a close relation to the third party, and "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id.*  An "injury in fact," for standing purposes, is "a concrete and particularized, actual or imminent invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In its proposed Amended Answer and Cross-claims, the Estate alleges that it "will suffer damages" if the alleged intention of the decedent to name Jacobs as the annuity beneficiary is not followed. Doc. 56-1 ¶ 48.  It further asserts a claim of negligence and breach of duty against Edward Jones based on its alleged  failure to properly designate Jacobs as the beneficiary, which has caused the Estate to "suffer[] damages." *Id.* ¶ 77.  But the Estate does not elaborate on the damages it will allegedly suffer if Jacobs is not recognized as the annuity beneficiary.  Merely alleging the suffering of unidentified damages fails to establish the existence of an injury that is "concrete and particularized," as the standing doctrine requires.  On this record, the Estate does not have standing to assert claims related to Jacobs' allegation that he is the correctly designated beneficiary.  Therefore, it cannot adequately represent Jacobs' interest.  Without Jacobs' intervention, then, it is unlikely he could protect his alleged interest in the annuity proceeds. *See* Fed. R. Civ. P. 24(a)(2).

The Court concludes that Jacobs has established the requirements of intervention of right. Even if he had not, however, the Court would exercise its discretion to allow his permissive intervention. As noted, his claim raises common questions of law and fact with the main action. In addition, because Jacobs has raised a claim to the annuity proceeds whose ownership is the subject of this interpleader action, it serves the interests of judicial economy to adjudicate his claim to the proceeds together with Fazio's claim. Jacob's Motion to Intervene is due to be granted.

## III.    THE ESTATE'S MOTION TO AMEND (DOC. 56)

Federal Rule of Civil Procedure 15 requires a court to "freely give leave" to a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has explained, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). It is within the discretion of the Court to grant or deny an opportunity to amend. *See id.*

However, "[w]hen a plaintiff seeks leave to amend its complaint after the time required by the district court's scheduling order, the plaintiff 'must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a).'" *AMG Trade & Distribution, LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 408 (11th Cir. 2020), quoting *Sosa v. Airprint Sys., Inc.*, 133 F. 3d 1417,

1419 (11th Cir. 1998).  "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Id.*, citing *Sosa*, 133 F.3d at 1418; *see also Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 801 (11th Cir. 2013) (district court did not abuse discretion in denying party's request to modify the amendment deadline based on party's lack of diligence).

The Estate moves to amend its responsive pleading in order to assert two additional claims and add a party.  It argues that its motion is timely because it was filed on March 27, 2023, and "this Court has established March 27, 2023, as the date by which the parties may initially seek to amend pleadings or to add parties." Doc. 56 at 5.  The Estate relies on the parties' proposed deadline of March 27, 2023, in their Case Management Report, asserting that the Court's Case Management and Scheduling Order ("CMSO") "approv[ed] most (if not arguably all) dates agreed upon in" it. *Id.* at 2.

The Estate's statements regarding timeliness are not supported by the CMSO. The Amended CMSO issued on December 22, 2022, expressly listed the deadlines it was adopting from the parties' Case Management Report. Doc. 37 at 1.  Motions to amend pleadings were not included on the list. *Id.*  Immediately after the list, the CMSO stated,

> Parties shall take heed that motions to amend any pleading…filed after issuance of this Case Management and Scheduling Order *are disfavored*.  If evidence arises during fact discovery that would support a motion to amend a pleading, the moving party shall file a motion to amend within *fourteen (14) days* of learning of the

15

> evidence.  Motions to amend after that fourteen (14) day window
> will be governed by a good cause standard. *See* Fed. R. Civ. P.
> 16(b)(4).

*Id.* at 2 (emphasis in original).  Accordingly, the Estate is incorrect that the CMSO adopted the parties' deadline for motions to amend pleadings.  Rather, the Estate was required to abide by the Court's strict instructions.  The Estate does not argue that it moved to amend the pleading within 14 days of discovering evidence that warranted an amendment.  On the contrary, its response in opposition to Protective's interpleader motion, which raised the same factual allegations on which its motion to amend is based, was filed on February 28—a month before its motion to amend. *See* Doc. 44. The Estate is therefore required to demonstrate good cause for its delay. *See* Doc. 37 at 2.

The Estate has offered no explanation of good cause that led to its delay in filing the motion to amend.  It instead argues that no parties will be prejudiced by the filing of an amended pleading. Doc. 56 at 2-3.  The Estate further explains that it is moving for leave to amend "in an abundance of caution," by which it may mean that it is moving to amend in the alternative should the Court deny Jacobs' motion to intervene. *Id.* at 4.  It is therefore unclear whether it still seeks to amend in light of the Court's decision to grant Jacobs' motion to intervene.  In any event, the Court finds that the Estate has failed to establish good cause for its delay in moving to amend its responsive pleading.  Accordingly, the motion is due to be denied.

In the alternative, the Court finds that the motion is due to be denied because the proposed pleading does not state a claim for relief.  A district court is not required

to allow amendment of a pleading where the amendment would be futile.  After all, leave should be freely given "[i]f the underlying facts or circumstances relied upon by a plaintiff [are] a proper subject of relief[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). But granting leave to amend is futile if the amended claims would be subject to dismissal as a matter of law. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004).

As discussed in Section II(C), *supra*, the Estate does not have standing to assert a claim that Jacobs is entitled to the annuity proceeds, or that Edward Jones breached its duty by allegedly failing to change the beneficiary to Jacobs, because the Estate has not established that it suffered an injury in fact.  Although the Estate may have standing to request a declaratory judgment that Fazio's designation was obtained by undue influence or is void *ab initio*, Doc. 56-1 at 13, this conclusory statement is not supported by any factual allegations, let alone allegations that establish a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged"; holding that the Court is not bound to accept as true a legal conclusion stated as a factual allegation in the complaint).  Because the Estate's proposed amended pleading is subject to dismissal, leave to amend is futile.  The Estate's motion to amend is due to be denied.

17

## IV.   PROTECTIVE'S INTERPLEADER MOTION (DOC. 41)

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co–op. Hous. Ass'n Inc.*, 21 F.3d 380, 383 (11th Cir.1994).  Federal Rule of Civil Procedure 22 permits individuals "with claims that may expose a plaintiff to double or multiple liability" to be joined as defendants and required to interplead," even if their claims are adverse. Fed. R. Civ. P. 22(a)(1).  Interpleader actions proceed in two stages.  First, the court "determines whether interpleader is proper and whether to discharge the stakeholder from further liability to the claimants." *Ohio Nat. Life Assur. Copr. v. Langkau ex rel. Est. of Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009) (quotation omitted).  At the second stage, "the court evaluates the respective rights of the claimants to the interpleaded funds." *Id.*

In the first stage, the burden is on the party seeking interpleader to demonstrate that it has been or may be subject to adverse claims. *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974).  The party seeking interpleader must then show that it is disinterested: in other words, "that he had incurred no independent liability to any claimant, such that he was indifferent as between" them. *Langkau*, 353 Fed. App'x at 248 (quotation omitted).   If interpleader is available, and the stakeholder is disinterested, the court may issue an order discharging the stakeholder. *Id.*

Protective's interpleader motions makes four requests: A) to deposit the annuity proceeds into the court registry; B) a discharge from liability and dismissal from the action with prejudice; C) an injunction against the institution of any actions against it related to the annuity proceeds; and D) attorneys' fees and costs. Doc. 41.  Each will be addressed in turn.

**A. Deposit of Funds**

First, Protective asks to be permitted to deposit the annuity proceeds, plus any applicable interest, into the court registry. Doc. 41 at 6-7.  No party disputes that the funds should be deposited into the court registry.  However, Fazio requests that they be deposited into an interest-bearing account. Doc. 41 at 2.

Under Federal Rule of Civil Procedure 67(a), a party in possession of a sum of money that is in dispute in an action may deposit it with the court.  The money "must be deposited into an interest-bearing account or invested in a court-approved, interest-bearing instrument." *Id.* at 67(b).  The responsibility for ensuring that the money is placed in an interest-bearing account rests with the Clerk of Court, rather than the depositor. *See*, *e.g.*, *Cordero v. De Jesus-Mendez*, 922 F.2d 11 (1st Cir. 1990), citing Fed. R. Civ. P. 67 advisory committee's note to 1983 Amendment.

Protective's motion to deposit the annuity proceeds is unopposed, and there is no reason why it should not be granted. *See Jackson Nat'l Life Ins. Co. v. Sun Coast Tr. Co., Inc.*, No. 8:18-cv-1401, 2019 WL 1787491, *4 (M.D. Fla. April 24, 2019) ("Jackson's request to deposit the policy proceeds into the court's registry is unopposed. … There is no reason why the funds should not be deposited into the

court's registry. Jackson's request to deposit the policy proceeds is granted."). Accordingly, this aspect of Protective's motion is due to be granted.  The Clerk of Court shall be directed to place the funds in an interest-bearing account in accordance with Rule 67(b).

## B. Discharge From Liability

Next, Protective seeks relief under the first stage of interpleader, asking to be dismissed from the action with prejudice and discharged from all liability with respect to the annuity proceeds. Doc. 41.  As a threshold matter, no party disputes that Protective may be subject to adverse claims with respect to the annuity proceeds.  The Court therefore finds that interpleader is available.  The question remains as to whether Protective is a disinterested stakeholder.

Protective asserts that it is disinterested because it does not claim any interest in the annuity proceeds and has not incurred any independent liability to any party. Doc. 41 at 6.  It further points out that no existing or putative party has raised a claim against it; for example, neither the Estate's proposed amended pleading nor Jacobs' proposed complaint-in-intervention includes a claim against Protective. Doc. 71 at 1-2; Doc. 73 at 2.  In response, the Estate argues that there is evidence that Protective had actual or imputed knowledge of the decedent's alleged intent to change the annuity beneficiary through its agent, Edward Jones. Doc. 44 at 3.  Although the Estate does not oppose Protective's removal as a party in interest to the annuity proceeds, it contends that a determination of immunity from all liability is premature. *Id.* at 4.  Protective responds that there is no valid theory of liability against it. Doc. 54.

Courts have found that interpleader plaintiffs are not disinterested when a party has raised a potential claim against them, and that it is premature to discharge them from liability until the completion of discovery.  In *Am. Gen. Life Ins. Co. v. Soule*, No. 8:08-cv-1357-SDM-EAJ, 2008 WL 4790654, *3 (M.D. Fla. Oct. 27, 2008), for example, the interpleader defendants alleged that the insurance company's "failure to honor a subsequent change of beneficiary notice completed by Decedent shortly before his death caused the conflicting claims."  As a result, the court found that the company "may be independently liable to [the defendants]," and declined to recommend a final discharge from all liability; instead, it invited the company to renew its request for final discharge upon the completion of discovery. *Id.*; *see also Jackson Nat'l Life Ins. Co. v. Sun Coast Tr. Co., Inc.*, No. 8:18-cv-1401-SDM-AAS, 2019 WL 1787491, *4 (M.D. Fla. April 24, 2019) (same, where party alleged that insurance company was liable for changing the policy beneficiary and diminishing its value); *Clark v. JPMorgan Chase Bank, N.A.*, No. 20-24326-CIV, 2021 WL 2895717, *3 (S.D. Fla. July 9, 2021) (same, where outstanding questions remained regarding bank's potential liability).  In contrast, the court discharged the interpleader plaintiff from liability in *Primera Life Ins. Co. v. Young*, No. 8:22-CV-256-MSS-TGW, 2022 WL 17417002, at *2 (M.D. Fla. July 29, 2022), *report and recommendation adopted*, 2022 WL 17416903 (Aug. 18, 2022), where "any counterclaims initially filed against [it] have been dismissed…so that the remaining claimants do not have any independent claims against [it.]"

In a case similar to the instant action, *Hauger v. John Hancock Life Ins. Co.*, No. 8:07-cv-1711-EAJ, 2008 WL 341432, *4 (M.D. Fla. Feb. 5, 2008), the court found that

the insurance company who issued an annuity was not a disinterested, innocent stakeholder, because the plaintiff alleged that the company's "actions provoked the dispute" over the proceeds by failing to admit receipt of a change of beneficiary form and failing to update the beneficiary designation in its records. The plaintiff initially brought an action against the insurance company, which filed a cross-claim for interpleader. *Id.* at *1. In response to the interpleader motion, the plaintiff did not oppose the discharge of the insurance company from the action once it responded to discovery, but argued that a discharge "from all liability whatsoever" would "release [it] from [its] own negligence if [the plaintiff] later discovered that [the company] received Decedent's designation and failed to properly act in accordance with Decedent's instructions." *Id.* at *2. The court agreed with the plaintiff that the insurance company's final discharge from the action was premature, and invited the company to renew its interpleader motion after it complied with discovery. *Id.* at *3.

Here, the Estate has identified a potential theory of liability against Protective. Unlike in *Hauger* and *Soule*, however, the Estate has already had an opportunity to conduct at least partial discovery and to assert any additional claims that it may have against Protective. It is significant that the Estate did not seek to amend its pleading to add a claim against Protective, despite its attempt to add a claim against Edward Jones based on a similar theory of liability. Additionally, although the Estate argues that discharge is inappropriate until Jacobs is permitted to intervene, Jacobs also failed to identify any claim against Protective in its complaint-in-intervention. Finally, the Estate has consented to Protective's discharge as a party to the action, objecting only

to a dismissal with prejudice.  On the other hand, unlike in *Young*, the Estate has not formally withdrawn its prospective allegations against Protective, and the discovery deadline has not yet passed.

The Court finds that Protective's interpleader motion should be granted to the extent that it is discharged as a party to this action.  At this stage, however, it would be premature to dismiss Protective with prejudice or make a finding that it is immune from liability until the close of discovery.  Accordingly, that aspect of Protective's motion is due to be denied.  Protective may renew its motion at the conclusion of the action.

### C. Injunction

Protective also asks the Court to issue a permanent injunction that prohibits the interpleader defendants from instituting or maintaining any action against it in connection with the annuity proceeds. Doc. 41 at 8.  The Court declines to issue such an order.  Protective has brought this interpleader action under Rule 22 of the Federal Rules of Civil Procedure, rather than statutory interpleader under 28 U.S.C. § 1335. *See* Doc. 1 at 1.  Only statutory interpleader provides for the injunction that Protective requests. *See* 28 U.S.C. § 2361; *see, e.g.*, *Hallman v. Hallman*, No. 5:12-cv-4, 2012 WL 5879825, *2 (M.D. Ga. Nov. 21, 2012) (denying injunction in a rule interpleader action), citing 7 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1717 (3d ed.) ("Section 2361 only authorizes injunctions against other judicial proceedings in statutory interpleader actions; it does not apply to rule interpleader."); *Sun Life Assurance Co. of Canada v. McElroy*, No. 2:10-CV-488, 2010 WL 11615016, *1

(N.D. Ala. June 3, 2010) (same); *Am. Gen. Ins. Co. v. Jones*, No. CIV A 08-211, 2008 WL 4949847, *1-2 (S.D. Ala. Nov. 13, 2008) (same).   Moreover, Protective does not argue that the issuance of an injunction is "necessary in aid of [the Court's] jurisdiction, or to protect or effectuate its judgments," such that it would be permitted under the Anti-Injunction Act. 28 U.S.C. § 2283.   Lastly, the Court has already concluded that immunity from liability is premature.   Accordingly, Protective's request for an injunction is denied.

### D. Attorney's Fees

Finally, Protective requests an award of $2,332.00 in attorney's fees and costs that it states exceeded the scope of a typical interpleader action, which it attributes to the Estate's objections to its interpleader motion. Doc. 41 at 9-11.[7]  Protective proposes to subtract the requested amount from the annuity proceeds. *Id.*   Both Defendants oppose this request.   The Estate argues that it did not cause the accrual of any fees beyond those necessary for the normal course of business; in any event, it asserts the fees may have been incurred as a result of Protective's or its agent's errors and omissions. Doc. 44 at 12-13.   Fazio agrees that Protective is entitled to fees and that the identified amount is reasonable, but contends that Personal Representative Eileen Jacobs should pay the fees out of her own pocket, because they are attributable to her unnecessary actions and delays on behalf of the Estate. Doc. 42 at 3-6.

---

[7] Protective has not updated its fee request in light of the additional motion practice that has occurred since the filing of its motion.

A disinterested stakeholder initiating a necessary interpleader action may receive attorney's fees and costs, within the Court's discretion, unless the claim arises out of the normal course of the plaintiff's business. *In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994).  This exception "typically is applied to insurance companies," for which disputed claims to insurance proceeds "arise with some modicum of regularity." *Id.*  Insurance companies may only be entitled to those fees and costs that are "not of the type regularly incurred" in the course of the insurance business. *Id.* at 383 n.2 (citations omitted); *see Unum Life Ins. Co. of Am. v. Smith*, No. 2:17-cv-489, 2018 WL 1977257, *4 (M.D. Ala. March 28, 2018) ("the majority of district court cases in the Eleventh Circuit disfavor the award of attorneys' fees in interpleader lawsuits involving insurance companies and disputed proceeds.").

Here, the initiation of an interpleader action and the filing of an interpleader motion occurred within the normal course of Protective's business as an insurance company. *See Sun Life Assurance Co. of Canada v. McElroy*, No. 2:10-cv-488, 2010 WL 11615016, *2 (S.D. Ala. June 3, 2010) (denying attorney's fees under the *Mandalay* rule for an insurance company that initiated an interpleader action and moved for a discharge from liability); *see also, e.g., Huntington Nat'l Bank v. Jesus Film Project*, No. 6:18-cv-704-PGB-TBS, 2018 WL 6983630, *3 (M.D. Fla. Dec. 4, 2018) (same), *report and recommendation adopted,* 2019 WL 2225754 (Mar. 6, 2019); *Fidelity & Guar. Life Ins. Co. v. Estate of Smith ex rel. Smith*, No. 5:12-cv-224, 2012 WL 3561790, *1 (M.D. Ga. Aug. 16, 2012) (same; collecting cases); *Hauger*, 2008 WL 341432 at *4 (denying

attorney's fees where "the dispute over the proceeds of the annuity fund arose in the normal course of business"). As a result, the Court finds that Protective is not entitled to the attorney's fees and costs it requested in its motion. Those requests are due to be denied.

However, by this point in the litigation, Protective has engaged in additional motion practice that may go beyond what would be expected in the regular course of its business. It has responded to multiple motions to intervene and the motion to amend, and it has substantively opposed an allegation that it was responsible for the dispute over the proceeds. Thus, it is possible that it has incurred expenses beyond what it could normally expect in the regular course of business.

At this point, several outstanding questions remain before a fee award can be determined. Protective has not provided updated fee and cost calculations to account for the more recent motion practice. And, as described in Section III(B), *supra*, the Estate has identified a theory under which Protective is not a disinterested stakeholder, which remains outstanding, at least until the close of discovery. Moreover, Fazio's argument that attorney's fees should be paid by Eileen Jacobs or the Estate, rather than taken from the annuity proceeds, cannot be resolved until the second stage of the interpleader proceedings addresses the merits of the parties' competing claims. As a result, Protective's request for attorney's fees and costs must be deferred until the end of the proceedings. *See Fid & Guar. Life Ins. Co. v. Sanchez*, No. 6:13-cv-70-CEM-KRS, 2014 WL 2801237, *1 (M.D. Fla. May 6, 2014) (noting that it deferred resolution of

attorney's fees until the end of the interpleader proceedings despite the insurance company's discharge from liability).

Accordingly, it is **ORDERED**:

1. Putative Intervenor Richard G. Jacobs' Second Motion to Intervene (Doc. 67) is **GRANTED**.

2. The Estate's Motion to Amend its Answer and Cross-claims (Doc. 56) is **DENIED**.

3. Protective's Motion for Deposit of Funds, Discharge of Liability, Dismissal With Prejudice, and Attorneys' Fees ("interpleader motion") (Doc. 41) is **GRANTED-IN-PART and DENIED-IN-PART**. The Motion is **granted** to the extent that Protective must deposit the subject annuity proceeds into the court's registry, and that Protective is discharged as a party to this action. Protective's request for attorney's fees and costs is **deferred** until the end of this action, to the extent that Protective requests fees and costs beyond the initiation of this action and the filing of its interpleader motion. The Motion is otherwise **denied**.

4. The Clerk is further directed to accept the deposit of annuity proceeds into the court's registry and place it in an interest-bearing account.

**DONE** and **ORDERED** in Tampa, Florida on June 23, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to: Counsel of Record; Unrepresented Parties